REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

LIONEL Z. GLANCY (#134180)
  lglancy@glancylaw.com
JONATHAN ROTTER (#234137)
  jrotter@glancylaw.com
GARTH SPENCER (#335424)
  gspencer@glancylaw.com
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

LAWRENCE P. EAGEL (*pro hac vice*)
  eagel@bespc.com
DAVID J. STONE (#208961)
  stone@bespc.com
MELISSA A. FORTUNATO (#319767)
  fortunato@bespc.com
BRAGAR EAGEL & SQUIRE, P.C.
810 Seventh Avenue, Suite 620
New York, New York 10019
Telephone: (212) 308-5858
Facsimile: (212) 486-0462

*Attorneys for Lead Plaintiffs Robert Wolfson and*
*Frank Pino and Co-Lead Counsel for the Class*

[Additional Counsel on Signature Block]

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT CRAGO, Individually and on Behalf of All Others Similarly Situated,<br><br>                 Plaintiff,<br><br>         v.<br><br>CHARLES SCHWAB & CO., INC., and THE CHARLES SCHWAB CORPORATION,<br><br>                 Defendants. | Case No. 3:16-cv-03938-RS<br><br>CLASS ACTION<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:       September 23, 2021<br>Time:       1:30 pm<br>Crtrm.:     3, 17th Floor<br><br>Honorable Richard G. Seeborg |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on September 23, 2021 at 1:30 p.m., before the Honorable Richard Seeborg, in Courtroom 3, 17th Floor, located at the Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Lead Plaintiffs Robert Wolfson ("Wolfson") and Frank Pino ("Pino"), and named plaintiff K. Scott Posson ("Posson" and, collectively, "Plaintiffs") will move under Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(3), and 23(g), for an Order:

1.  Certifying the following Class:

    All clients of Charles Schwab & Co., Inc. or The Charles Schwab Corporation (together, "Schwab") between July 13, 2011 and December 31, 2014 (the "Class Period) who placed one or more non-directed equity orders during the Class Period that were routed to UBS by Schwab pursuant to the Equities Order Handling Agreement ("EOHA") and that received price disimprovement. Excluded from the Class are the officers, directors, and employees of Schwab.

2.  Appointing Plaintiffs Wolfson, Pino, and Posson as Class Representatives;

3.  Appointing Lead Counsel Glancy Prongay & Murray LLP and Bragar Eagel & Squire, P.C., and counsel for Plaintiff Posson, Levi & Korsinsky, LLP, as Class Counsel; and

4.  Granting such other and further relief the Court may deem just and proper.

Class certification, the appointment of Plaintiffs as Class Representatives, and the appointment of Class Counsel are proper, where, as here, the Class is so numerous that joinder is impracticable, common questions of law and fact predominate, Plaintiffs' claims are typical of the Class' claims, Plaintiffs and their counsel will fairly and adequately represent the Class, and a class action is superior to individual actions.

This Motion is made pursuant to the Court's January 28, 2021 Order (Dkt No. 158) relating to the parties' class certification scheduling stipulation.  It is based on the Memorandum of Points and Authorities below, the declarations and exhibits filed herewith, the pleadings and other filings in this action, such further argument as the Court may allow at the hearing on this motion, and any other evidence and argument that may be presented to the Court.

1
2
## <u>TABLE OF CONTENTS</u>

3
ISSUES TO BE DECIDED................................................................................................. 1
4
PRELIMINARY STATEMENT AND BACKGROUND ................................................. 1
5
ARGUMENT .................................................................................................................... 4
6
    I.    Schwab's Fraud Harmed its Customers on a Class-Wide Basis .............................. 6
7
8
        A.    Schwab Violated its Duty of Best Execution on a Class-Wide Basis........... 6
9
        B.    Schwab Fraudulently Omitted to Disclose Material Facts Regarding its Best Execution Failures on a Class-Wide Basis.................................................. 17
10
11
        C.    Schwab Damaged Its Customers On A Class-Wide Basis.......................... 17
12
    II.    Legal Standard For Certifying A Class .................................................................. 18
13
    III.    The Proposed Class Satisfies Rule 23(a)................................................................. 20
14
        A.    Numerosity ................................................................................................... 20
15
        B.    Commonality ................................................................................................ 22
16
        C.    Typicality ..................................................................................................... 23
17
        D.    Adequacy ..................................................................................................... 24
18
    IV.    The Proposed Class Satisfies Rule 23(b)(3)............................................................. 25
19
20
        A.    Plaintiffs Have Proven That Common Issues Predominate ......................... 25
21
        B.    Superiority .................................................................................................... 37
22
        C.    The Proposed Class Also Satisfies Rule 23(b)(1) ...................................... 38
23
24
    V.    CONCLUSION .......................................................................................................... 38
25
26
27
28

1
2

## <u>TABLE OF AUTHORITIES</u>

3

### <u>CASES</u>

4

*Abdullah v. U.S. Sec. Assocs., Inc.*,
   731 F.3d 952 (9th Cir. 2013)...................................................................................... 25

*Affiliated Ute Citizens v. United States*,
   406 U.S. 128 (1972) ........................................................................................... *passim*

*Alcantar v. Hobart Serv.*,
   800 F.3d 1047 (9th Cir. 2015)...................................................................................... 22

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................. 19, 37

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ........................................................................... 18, 19, 25, 26

*Bennett v. Spear*,
   520 U.S. 154 (1997) ...................................................................................................... 19

*Bernstein v. Virgin Am., Inc.*,
   No. 15-cv-02277-JST, 2018 U.S. Dist. LEXIS 114721 (N.D. Cal. July 9, 2018) ...................... 19

*Binder v. Gillespie*,
   184 F.3d 1059 (9th Cir. 1999)...................................................................................... 35

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975)................................................................................. 20, 35

*Bouaphakeo v. Tyson Foods, Inc.*,
   765 F.3d 791 (8th Cir. 2014)...................................................................................... 27

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017)...................................................................................... 21

*Brown v. DirecTV, LLC*,
   330 F.R.D. 260 (C.D. Cal. 2019) ................................................................................. 35

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
   137 S. Ct. 2042 (2017) ................................................................................................. 20

*Castillo v. Bank of Am., NA*,
   980 F.3d 723 (9th Cir. 2020)...................................................................................... 26

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Chalk v. T-Mobile USA, Inc.*,
    560 F.3d 1087 (9th Cir. 2009)................................................................................. 19

*Chinitz v. Intero Real Estate Servs.*,
    No. 18-cv-05623-BLF, 2020 U.S. Dist. LEXIS 247921 (N.D. Cal. July 22, 2020) .................. 21

*Class Certification in the Age of Aggregate Proof*,
    84 N.Y.U. L. Rev. 97 (2009)................................................................................. 22

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ................................................................................. 25, 27, 33

*Crago v. Charles Schwab & Co.*,
    No. 16-cv-03938-RS, 2017 U.S. Dist. LEXIS 215871 (N.D. Cal. Dec. 5, 2017)...................... 36

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) ................................................................................. 5, 26

*Fleming v. Matco Tools Corp.*,
    No. 19-cv-00463-WHO, 2021 U.S. Dist. LEXIS 33513 (N.D. Cal. Feb. 21, 2021).................. 20

*Ford v. TD Ameritrade Holding Corp.*,
    No. 18-3689, 2021 U.S. App. LEXIS 12008 (8th Cir. April 23, 2021) ........................... 3, 29, 30

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ................................................................................. 19

*Gonzales v. Arrow Fin. Servs. LLC*,
    489 F. Supp. 2d 1140 (S.D. Cal. 2007) ................................................................. 18

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) ................................................................................. 26

*Hamm v. Mercedes-Benz United States*,
    Case No. 5:16-cv-03370-EJD, 2021 U.S. Dist. LEXIS 65098 (N.D. Cal. April 2, 2021).......... 25

*Hanlon v. Chrysler Corp.*,
    150 F.3d, 1011 (9th Cir. 1998)................................................................................. 23, 24

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992)................................................................................. 23, 24

*Huntsman v. Sw. Airlines Co.*,
    No. 19-cv-00083-PJH, 2021 U.S. Dist. LEXIS 20856 (N.D. Cal. Feb. 3, 2021)................... 18, 19

*In re Cooper Cos. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009) ................................................................................. 18

*In re Facebook, Inc., PPC Adver. Litig.*,
   282 F.R.D. 446 (N.D. Cal. 2012) .......................................................................... 20, 21

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
   No. 14-cv-00722-SI, 2016 U.S. Dist. LEXIS 53734 (N.D. Cal. Apr. 21, 2016) ...................... 36

*In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. 2009) .......................................................................... 28, 29

*In re Rubber Chems. Antitrust Litig.*,
   232 F.R.D. 346 (N.D. Cal. 2005) ............................................................................ 20

*In re Smith Barney Transfer Agent Litig.*,
   290 F.R.D. 42 (S.D.N.Y. 2010) ............................................................................. 36

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
   MDL No. 2672 (JSC), 2019 U.S. Dist. LEXIS 166832 (N.D. Cal. Sept. 26, 2019) ................. 35

*Jordan v. Cty. of L.A.*,
   699 F.2d 1311 (9th Cir. 1982) ............................................................................... 20

*La Caria v. Northstar Location Servs.*,
   No. 2:18-cv-00317-GMN-DJA, 2020 U.S. Dist. LEXIS 93630 (D. Nev. May 28, 2020) ......... 34

*Lee v. State of Or.*,
   107 F.3d 1382 (9th Cir. 1997) ............................................................................... 19

*Mace v. Van Ru Credit Corp.*,
   109 F.3d 338 (1997) ........................................................................................... 19

*MadKudu Inc. v. United States Citizenship & Immigration Servs.*,
   No. 20-cv-02653-SVK, 2020 U.S. Dist. LEXIS 219184 (N.D. Cal. Nov. 17, 2020) ............... 21

*Melgar v. CSK Auto, Inc.*,
   681 F. App'x 605 (9th Cir. 2017) ........................................................................... 34

*Nelson v. Serwold*,
   687 F.2d 278 (9th Cir. 1982) .............................................................................. 6, 37

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001) ................................................................... 5, 28, 29, 35

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   2021 U.S. App. LEXIS 12707 (9th Cir. April 28, 2021) ............................................... 32

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   No. 19-56514, 2021 U.S. App. LEXIS 9880 (9th Cir. Apr. 6, 2021) ........................ 28, 32, 33

*Parker v. Cherne Contr. Corp.*,
   No. 18-cv-01912-HSG, 2020 U.S. Dist. LEXIS 218187 (N.D. Cal. Nov. 20, 2020) ................ 19

*Pavloff v. Cardinal Logistics Mgmt. Corp.*,
   No. CV 20-00363 PA (KKx), 2020 U.S. Dist. LEXIS 221745 (C.D. Cal. Oct. 7, 2020) .......... 35

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
   No. C 19-04744 WHA, 2021 U.S. Dist. LEXIS 12458 (N.D. Cal. Jan. 21, 2021) .............. 25, 26

*Randall v. Loftsgaarden*,
   478 U.S. 647 (1986) .................................................................................................. 6, 37

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,
   845 F.3d 1268 (9th Cir. 2017) ......................................................................................... 36

*Richards v. Jefferson Cty., Ala.*,
   517 U.S. 793 (1996) ........................................................................................................ 24

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 2013 (9th Cir. 2011) ......................................................................................... 25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ........................................................................................................ 18

*Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) ............................................................................... 22, 31, 32

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ............................................................................................... 26, 27

*United Food & Commercial Workers Union & Emp'rs Midwest Health Benefits Fund v.
   Warner Chilcott Ltd.*,
   907 F.3d 42 (1st Cir. 2018) .............................................................................................. 33

*Villalpando v. Exel Direct Inc.*,
   303 F.R.D. 588 (N.D. Cal. 2014) ..................................................................................... 20

*Vizcaino v. United States Dist. Ct. Wash.*,
   173 F.3d 713 (9th Cir. 1999) ........................................................................................... 34

*Wakefield v. Visalus, Inc.*,
   No. 3:15-cv-01857-BR, 2017 U.S. Dist. LEXIS 228201 (D. Or. June 23, 2017) ...................... 32

*Walker v. Life Ins. Co. of the SW*,
   953 F.3d 624 (9th Cir. 2020) ........................................................................................... 25

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ........................................................................................... 19, 22, 23

*Walters v. Target Corp.*,
   No. 3:116-cv-1678-L-MDD, 2020 U.S. Dist. LEXIS 198765 (9th Cir. Oct. 26, 2020) ....... 23, 24

*Williams v. PillPack LLC*,
   No. C19-5282 TSZ, 2021 U.S. Dist. LEXIS 27496 (W.D. Wash. Feb. 12, 2021) .................... 21

*Wood v. Granite Constr. Co.*,
   CIV-S-03-2592 DFL PAN, 2005 U.S. Dist. LEXIS 55541 (E.D. Cal. Mar. 11, 2005) ............. 20

*Zeisel v. Diamond Foods, Inc.*,
   No. C 10-01192 JSW, 2011 U.S. Dist. LEXIS 60608 (N.D. Cal. June 7, 2011) ....................... 18

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ............................................................................................. 19

## STATUTES

15 U.S.C. § 78j(b) ........................................................................................................................ 4

28 U.S.C. § 1658(b) .................................................................................................................... 20

## RULES

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

Fed. R. Civ. P. 30 .................................................................................................................... 2, 7

FINRA Rule 5310 ............................................................................................................. *passim*

## REGULATIONS

17 C.F.R. § 240.10b-5 ................................................................................................................. 4

## ISSUES TO BE DECIDED

1.     Whether the following Class should be certified:

All clients of Charles Schwab & Co., Inc. or The Charles Schwab Corporation (together, "Schwab"), between July 13, 2011 and December 31, 2014 (the "Class Period"), who placed one or more non-directed equity orders during the Class Period that were routed to UBS by Schwab pursuant to the Equities Order Handling Agreement ("EOHA") and that received price disimprovement. Excluded from the Class are the officers, directors, and employees of Schwab.

2.     Whether Plaintiffs Wolfson, Pino, and Posson should be appointed as Class Representatives.

3.     Whether Glancy Prongay & Murray LLP, Bragar Eagel & Squire, P.C., and Levi & Korsinsky, LLP, should be appointed as Class Counsel.

## PRELIMINARY STATEMENT AND BACKGROUND

This is a securities class action arising out of Schwab's failure to disclose to its customers that it routed almost all of its customers' non-directed equity orders to UBS Securities, LLC ("UBS"), pursuant to an Equities Order Handling Agreement ("EOHA"), regardless of whether doing so was consistent with Schwab's duty of best execution. *See* ¶47.[1]

---

[1] Citations to the Second Amended Class Action Complaint for Violations of Federal Securities Laws [Dkt. No. 81] (the "Complaint") are in the form "¶__".



On December 5, 2017, this Court denied Schwab's motion to dismiss the operative Complaint. Dkt No. 98. The parties have since been engaged in discovery, with a focus on class certification, which remains ongoing. Fact discovery has included the depositions of each Plaintiff and a Schwab representative witness under Fed. R. Civ. P. 30(b)(6), and has also included Schwab's production of certain internal documents and customer order data. Plaintiffs also subpoenaed UBS for additional necessary data and, after successfully litigating a motion to compel in the United States District Court for the Southern District of New York, obtained trade records from UBS for Schwab customer orders based on a sampling of fourteen dates throughout the Class Period. *See generally Wolfson v. UBS Securities LLC*, Case No. 1:19-mc-00108, United States District Court for the Southern District of New York.

Discovery has also included the Parties' exchange of expert reports, including the Plaintiffs' Expert Report of Haim Bodek, dated September 1, 2020 ("Bodek Report"),

Supplementary Submission to the Expert Report of Haim Bodek, dated October 28, 2020 ("Supplementary Submission"); Schwab's Report of Allan W. Kleidon, Ph.D., dated December 7, 2020 ("Kleidon Report"), and Plaintiffs' Expert Rebuttal Report of Haim Bodek, dated March 12, 2021 ("Rebuttal Report"). Following the exchange of expert reports, Mr. Bodek and Dr. Kleidon gave deposition testimony.

The crux of the fight over class certification concerns Defendants' arguments that Plaintiffs will be unable to prove damages or economic loss on a class-wide basis because: (i) Plaintiffs' expert's analysis and opinions concerning his ability to calculate damages by using a computer model or algorithm to evaluate each relevant customer trade is flawed and unreliable; and (ii) individual issues concerning each individual customer trade predominate. Defendants will undoubtedly rely upon the recent decision from the Eighth Circuit in *Ford v. TD Ameritrade Holding Corp.*, No. 18-3689, 2021 U.S. App. LEXIS 12008 (8th Cir. April 23, 2021) ("*TD Ameritrade*"), where the court reversed the district court's order certifying a class of customers alleging harm by virtue of TD Ameritrade's breaches of its duty of best execution. As illustrated below, the *TD Ameritrade* decision is readily distinguishable because Plaintiffs here obtained trade data for fourteen select sample days and obtained other discovery that was unavailable to the plaintiffs in *TD Ameritrade*. This allowed Plaintiffs' expert, who was also the expert in *TD Ameritrade*, to apply algorithmic criteria to specific trade data to calculate economic harm, something he could not do in *TD Ameritrade*. Further, as discussed below, in certain respects the decision in *TD Ameritrade* is contrary to accepted Ninth Circuit law.

Plaintiffs' expert puts forth a comprehensive methodology for algorithmically calculating the economic harm suffered by an individual Class member. *See* accompanying Bodek Declaration and exhibits.[2] ███████████████████████████████████████ ███████████████████████████████████████████████████████████ .

---

[2] ███████████████████████████████████████████████████████ ███████████████████████████████

1   Plaintiffs' expert has put forth a reasonable class-wide method to determine the damages or

2   economic loss suffered by Class members on a trade-by-trade basis. That method withstands the

3   exhaustive scrutiny of Defendants' expert, who was effectively just quibbling around the edges of

4   the model. A rigorous analysis of Plaintiffs' expert's model shows that it is highly accurate and

5   appropriately determines and apportions class-wide damages. The model is sophisticated and

6   demonstrates the commonality of issues across the many millions of trades in the sample data.

7   Indeed, due to the number of trades and the small magnitude of damages associated with each

8   individual failure of best execution, this case is paradigmatically suited for class treatment.

9                                                    **ARGUMENT**

10          Plaintiffs assert claims on behalf of the Class under Section 10(b) of the Securities

11   Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and U.S. Securities and

12   Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Rule

13   10b-5 provides as follows:

14          It shall be unlawful for any person, directly or indirectly, by the use of any means
             or instrumentality of interstate commerce, or of the mails or of any facility of any
15           national securities exchange,

16          (a) To employ any device, scheme, or artifice to defraud,

17          (b) To make any untrue statement of a material fact or to omit to state a material
             fact necessary in order to make the statements made, in the light of the
18           circumstances under which they were made, not misleading, or

19          (c) To engage in any act, practice, or course of business which operates or would
20           operate as a fraud or deceit upon any person, in connection with the purchase or
             sale of any security.

21

22   17 C.F.R. § 240.10b-5.

23          The Complaint alleges that Schwab's failure to disclose the truth to its customers regarding

24   Schwab's order routing decisions and the operation of the EOHA constituted material omissions

25   necessary to make Schwab's statements concerning its compliance with best execution not false

26   and misleading. Corollary to these allegations, the Complaint alleges that Schwab's

27   representations to the Class members that it complied with its duty of best execution were false

28   and misleading.

To prove a claim under Rule 10b-5, Plaintiffs must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase and sale of a security; (4) reliance on the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809-10 (2011).

Each of the elements of the Class' claims can be proven by common evidence. ██████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████ Finally, as discussed further below, because Schwab owed a fiduciary duty of disclosure to the Class and because Plaintiffs primarily allege omissions, Plaintiffs do not have to demonstrate reliance on an individual basis. *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 174-76 (3d Cir. 2001).

Economic loss and loss causation will also be demonstrated by common proof. Plaintiffs will apply Mr. Bodek's objective algorithm to objective trading data relevant to each Class members' trades during the Class Period. The algorithm will demonstrate, without the need for individual inquiries, which trades suffered economic loss due to Schwab's wrongful conduct and the amount of such loss. As defined, the Class includes only those Schwab customers who suffered economic loss in the form of price disimprovement as calculated under Mr. Bodek's generally applicable methodology. Although the data for each trade is different, the method for determining the existence and amount of damages is standardized and does not rely on any

individual factors. Separate inquiries or trials are not needed to a render full and complete judgment in favor of the Class.

Further, as a result of Schwab's breach and the resulting economic loss suffered by all Class members, all Class members are entitled to restitution or rescissory damages, regardless of the particular amount of monetary "disimprovement" suffered on their trades. Such damages also can be demonstrated through Schwab's records. Remedies for a breach of Rule 10b-5 include monetary damages, rescissory damages, and restitution. The Supreme Court has noted that federal securities laws are intended to compensate defrauded investors and also to deter fraud and manipulative practices by encouraging a full disclosure of material information. *Randall v. Loftsgaarden*, 478 U.S. 647 (1986). Class members are entitled to receive the fair value of the difference between what they received and what they should have received absent any fraudulent conduct, "except for the situation where the defendant received more than the seller's actual loss. In the latter case damages are the amount of the defendant's profit." *Affiliated Ute*, 406 U.S. at 155; *Nelson v. Serwold*, 687 F.2d 278, 280-81 (9th Cir. 1982).

**I.**     **Schwab's Fraud Harmed its Customers on a Class-Wide Basis**

      **A.**     **Schwab Violated its Duty of Best Execution on a Class-Wide Basis**

**1.** ████████████████████████████████████████████
████

Pursuant to FINRA Rule 5310, "[n]o member can transfer to another person its obligation to provide best execution to its customers' orders." FINRA Rule 5310 Supplementary Material at .09(a).   As such, even when routing its orders to another broker-dealer for execution on an automated, non-discretionary basis, a broker must satisfy its duty of best execution either by performing an order-by-order review or "periodically conduct[ing] regular and rigorous reviews of the quality of the executions of its customers' orders." *Id.* ███████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

   ██████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████

 ██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████

**2.**

As part of a broker's regular and rigorous review of execution quality, "[i]n reviewing and comparing the execution quality of its current order routing and execution arrangements to the

execution quality of other markets," a broker should consider factors including "differences in price disimprovement." FINRA Rule 5310 Supplementary Material at .09(b).

"Price disimprovement" is when a trade is executed at a price that is worse for the customer than the reference National Best Bid/Offer ("NBBO") price. ███████████████

**4.**

As part of a broker's regular and rigorous review of execution quality, "[i]n reviewing and comparing the execution quality of its current order routing and execution arrangements to the execution quality of other markets," a broker should consider factors including "the likelihood of execution of limit orders." FINRA Rule 5310 Supplementary Material at .09(b).

**5.** ████████████████████████████████████████

At all relevant times, FINRA Rule 5310 required a broker to "use reasonable diligence to ascertain the best market for the subject security and buy or sell in such market so that the resultant price to the customer is as favorable as possible under prevailing market conditions" and provided that a factor to be considered in assessing a broker's reasonable diligence is "the number of markets checked." FINRA Rule 5310(a)(1). Revisions to Rule 5310 effective May 31, 2012, contained Supplementary Material, which provided in part:

> the term "market" . . . is to be construed broadly, and it encompasses a variety of different venues, including, but not limited to, market centers that are trading a particular security. This expansive interpretation is meant to . . . inform broker-dealers as to the breadth of the scope of venues that must be considered in the furtherance of their best execution obligations.

FINRA Rule 5310 Supplementary Material at .02.



FINRA rules require that where a broker routes almost all orders to a single destination on an automated basis, as Schwab did, its "regular and rigorous" review of execution quality "must be conducted on a security-by-security, type-of-order basis (e.g., limit order, market order, and

market on open order)." FINRA Rule 5310 Supplementary Material at .09(a). ██████

Many of the factors required to be considered by a broker as part of its regular and rigorous review of execution quality are dependent on trade timing. *See* FINRA Rule 5310 Supplementary Material at .09(b) (listing factors for consideration including speed of execution, and price improvement or disimprovement as calculated based on quotes at the time the order is received by the market). Therefore time-related order and execution data is a key input to execution quality analysis, and the accuracy of such data significantly affects the accuracy of the analysis.

In conducting its regular and rigorous review of execution quality, a broker "must determine whether any material differences in execution quality exist among the markets trading the security and, if so, modify the member's routing arrangements or justify why it is not modifying its routing arrangements." FINRA Rule 5310 Supplementary Material at .09(b).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.** **Schwab Fraudulently Omitted to Disclose Material Facts Regarding its Best Execution Failures on a Class-Wide Basis**

**C.** **Schwab Damaged Its Customers On A Class-Wide Basis**

The Class is narrowly defined in terms of "price disimprovement" to include only those Schwab customers whose trades Mr. Bodek's methodology will identify as suffering direct, quantifiable economic loss on specific trades. *See* Bodek Report ¶¶167, 175.

1 ██████████████████████████████████████████████████████████████

2 ████████████████████████████████.

## II.    Legal Standard For Certifying A Class

The Supreme Court has repeatedly recognized the importance of class actions in redressing wrongs committed under the federal securities laws. *See, e.g.*, *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013) ("Congress, the Executive Branch, and this Court . . . have 'recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions . . . .'"); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313-14, 320 (2007) (same). "[D]oubts regarding the propriety of class certification generally should be resolved in favor of certification." *Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 U.S. Dist. LEXIS 60608, at * 19 (N.D. Cal. June 7, 2011) (quoting *Gonzales v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1154 (S.D. Cal. 2007)). "District courts have consistently recognized that the common liability issues involved in securities fraud cases are ideally suited for resolution by way of a class action." *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 641 (C.D. Cal. 2009).

Under Federal Rule of Civil Procedure 23(a), one or more members of a class may sue or be sued as representative parties on behalf of all members if: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23; *Huntsman v. Sw. Airlines Co.*, No. 19-cv-00083-PJH, 2021 U.S. Dist. LEXIS 20856, at *4-5 (N.D. Cal. Feb. 3, 2021). If all four prerequisites of Rule 23(a) are satisfied, the court then determines whether to certify the class under one of the three subsections of Rule 23(b), which requires plaintiff to show one or more of the following: (1) a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact common to the class predominate and

1   that a class action is superior to other methods available for adjudicating the controversy at issue.

2   Fed. R. Civ. P. 23(b)(1)-(3); *Huntsman*, 2021 U.S. Dist. LEXIS 20856, at \*5.

3        If a district court concludes that the moving party has met its burden of proof, the court has

4   broad discretion to certify the class. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186

5   (9th Cir. 2001), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). "[A] court's

6   class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the

7   plaintiff's underlying claim.'" *Parker v. Cherne Contr. Corp.*, No. 18-cv-01912-HSG, 2020 U.S.

8   Dist. LEXIS 218187, at \*14-15 (N.D. Cal. Nov. 20, 2020) (citing *Amgen*, 568 U.S. at 465-66

9   (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011))). But, Rule 23 does not permit

10   "free-ranging merits inquiries at the certification stage." *Parker*, 2020 U.S. Dist. LEXIS 218187,

11   at \*15 (citing *Amgen*, 568 U.S. at 465-66). "Merits questions may be considered to the extent—but

12   only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for

13   class certification are satisfied." *Parker*, 2020 U.S. Dist. LEXIS 218187, at \*15 (quoting *Amgen*,

14   568 U.S. at 465-66).

15        "[A] class representative must be a part of the class and 'possess the same interest and

16   suffer the same injury' as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156

17   (1982); *see also Lee v. State of Or.*, 107 F.3d 1382, 1390 (9th Cir. 1997) (explaining that standing

18   is a jurisdictional element that the plaintiff must satisfy before class certification). The burden of

19   establishing standing falls upon the plaintiff. *Bennett v. Spear*, 520 U.S. 154, 167-68 (1997) ("each

20   element of Article III standing 'must be supported in the same way as any other matter on which

21   the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the

22   successive stages of the litigation'").

23        Here, the Class' claims are particularly well-suited for class treatment. "The policy at the

24   very core of the class action mechanism is to overcome the problem that small recoveries do not

25   provide the incentive for any individual to bring a solo action prosecuting his or her rights."

26   *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*,

27   109 F.3d 338, 344 (1997)); *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1095 (9th Cir. 2009);

28   *Bernstein v. Virgin Am., Inc.*, No. 15-cv-02277-JST, 2018 U.S. Dist. LEXIS 114721, at \*19 (N.D.

Cal. July 9, 2018). "The availability of the class action to redress [securities] frauds has been consistently upheld, in large part because of the substantial role that the deterrent effect of class actions plays in accomplishing the objectives of the securities laws." *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975) (internal citations omitted).

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████. Accordingly, class treatment of these claims is especially appropriate. Further, this action was commenced almost five years ago, and therefore the statute of repose for securities fraud claims will soon expire. 28 U.S.C. § 1658(b). Because the pendency of this action does not toll the statute of repose for absent class members, *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042 (2017), if this matter does not proceed as a class action, Schwab may escape liability in connection with the absent Class members' trades.

## III.    The Proposed Class Satisfies Rule 23(a)

### A.    Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The sheer size of the class is the most important factor in determining whether a class is so numerous that joinder is impracticable." *Wood v. Granite Constr. Co.*, CIV-S-03-2592 DFL PAN, 2005 U.S. Dist. LEXIS 55541, at *4 (E.D. Cal. Mar. 11, 2005) (citing *Jordan v. Cty. of L.A.*, 699 F.2d 1311, 1319 (9th Cir. 1982)).  The party seeking certification "do[es] not need to state the exact number of potential class members, nor is a specific number of members required for numerosity." *Fleming v. Matco Tools Corp.*, No. 19-cv-00463-WHO, 2021 U.S. Dist. LEXIS 33513, at *8 (N.D. Cal. Feb. 21, 2021); *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005). However, courts within the Ninth Circuit generally agree that numerosity is satisfied if the class includes forty or more members. *Fleming*, 2021 U.S. Dist. LEXIS 33513, at *8; *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605-06 (N.D. Cal. 2014); *In re Facebook, Inc., PPC Adver. Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012).

1    The proposed class easily satisfies this factor. ███████████████

2    ████████████████████████████████████  ████████████████████████

3    ████████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████████

8    ██████████████████████████

9    The Class is also ascertainable. Notably, the Ninth Circuit has rejected any requirement

10   that a plaintiff demonstrate an "administratively feasible" way to identify class members.

11   *MadKudu Inc. v. United States Citizenship & Immigration Servs.*, No. 20-cv-02653-SVK, 2020

12   U.S. Dist. LEXIS 219184, at *15 (N.D. Cal. Nov. 17, 2020) (citing *Briseno v. ConAgra Foods,*

13   *Inc.*, 844 F.3d 1121, 1124-25, 1124 (9th Cir. 2017); *Williams v. PillPack LLC*, No. C19-5282

14   TSZ, 2021 U.S. Dist. LEXIS 27496, at *6 n.5 (W.D. Wash. Feb. 12, 2021). Ascertainability is not

15   a "threshold requirement" for class certification, and it is relevant "only to the extent it is

16   implicated by Rule 23's enumerated requirements." *MadKudu*, 2020 U.S. Dist. LEXIS 219184, at

17   *15.

18   A class is ascertainable if the court can determine whether an individual is a member

19   "before trial, and by reference to 'objective criteria.'" *Chinitz v. Intero Real Estate Servs.*, No. 18-

20   cv-05623-BLF, 2020 U.S. Dist. LEXIS 247921, at *22 (N.D. Cal. July 22, 2020). Mr. Bodek's

21   algorithm will identify Class members based upon objective criteria. The algorithm utilizes

22   objective, industry-accepted metrics applied to data to identify those trades where Schwab's

23   customers did not receive best execution and suffered economic harm in the form of price

24   disimprovement. ███████████████████████████████████████████████████

25

26   _____

27   [4]   *See* Schwab 2014 Annual Report at 13, available at
     https://content.schwab.com/web/retail/public/about-schwab/schw_annual_report_2014.pdf.

28

1    Plaintiffs, therefore, will identify both the Class members' identity and economic loss sustained by
2    each trade.

3    **B.    Commonality**

4    "What matters to class certification . . . is not the raising of common 'questions'—even in
5    droves—but, rather the capacity of a class-wide proceeding to generate common *answers* apt to
6    drive the resolution of the litigation." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th
7    Cir. 2016) (emphasis in original) (citing *Wal-Mart*, 564 U.S. at 350). To satisfy Rule
8    23(a)(2) commonality, "'[e]ven a single [common] question' will do." *Torres*, 835 F.3d at 1133
9    (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L.
10   Rev. 97, 132 (2009)). But because "[a]ny competently crafted class complaint literally raises
11   common questions, courts should look for a 'common contention' in determining whether putative
12   class members' claims can be litigated together." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052
13   (9th Cir. 2015) (internal citations omitted) (citing *Wal-Mart*, 564 U.S. at 349 (alteration in
14   original) (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L.
15   REV. at 131-32). "That common contention, moreover, must be of such a nature that it is capable
16   of class-wide resolution—which means that determination of its truth or falsity will resolve an
17   issue that is central to the validity of each one of the claims in one stroke." *Alcantar*, 800 F.3d at
18   1052 (citing *Wal-Mart*, 564 U.S. at 349).

19   There are numerous questions of law and fact common to the class that are central to the
20   validity of the claims:

- Whether Schwab omitted to disclose material information concerning the EOHA, Schwab's relationship with UBS, and Schwab's compliance with the duty of best execution to the Class;

- Whether Schwab's representations to the Class concerning trade execution and best execution were false and misleading in light of the material omissions;

- Whether Schwab acted with scienter;

- Whether Schwab's decision to enter into the EOHA and its amendments was motivated by a desire to maximize profits without regard for the Class;

- Whether Schwab's routing of non-directed equity orders pursuant to the EOHA was non-compliant with common law, regulatory and statutory duties;

- Whether Schwab knew that its routing of non-directed equity orders pursuant to the EOHA failed to obtain best execution and was non-compliant;

- Whether the Class is entitled to a presumption of reliance;

- Whether Schwab failed to take reasonable steps to achieve best execution for the Class members; and

- Whether and to what extent the Class members sustained damages due to Schwab's conduct and the proper measure of damages.

The answers to these questions will drive the resolution of this action. *Wal-Mart*, 564 U.S. at 350. The Class claims arise from common conduct by Schwab directed at the Class, and each Class member suffered the same manner of harm.

## C.    Typicality

The typicality requirement focuses on the relationship of facts and issues between the class and its representatives. *Walters v. Target Corp.*, No. 3:116-cv-1678-L-MDD, 2020 U.S. Dist. LEXIS 198765, at *9 (9th Cir. Oct. 26, 2020). "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. 338, 349 n.5.

"[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Walters*, 2020 U.S. Dist. LEXIS 198765, at *10 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d, 1011, 1020 (9th Cir. 1998)) (internal citations and quotation marks omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Walters*, 2020 U.S. Dist. LEXIS 198765, at *10 (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)) (internal citations and quotation marks omitted).

Here, Plaintiffs are typical of the Class they seek to represent. ████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████

5 **D.   Adequacy**

6       To serve as class representative, one must "fairly and adequately protect the interests of the

7 class." Fed. R. Civ. P. 23(a)(4). This requirement is aimed at protecting the due process rights of

8 absent members who will be bound by a class action judgment. *Walters*, 2020 U.S. Dist. LEXIS

9 198765, at *10; *Hanlon*, 150 F.3d at 1020; *Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 801

10 (1996). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and

11 their counsel have any conflicts of interest with other class members and (2) will the named

12 plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150

13 F.3d at 1020 (citation omitted).

14       There is no question that the proposed class representatives and their counsel are adequate.

15 Plaintiffs are committed to prosecuting this action on behalf of the Class through a verdict and to

16 achieve the best results for the Class. Plaintiffs have demonstrated their willingness to commit

17 time and effort to this litigation by searching for and producing documents in response to

18 Schwab's discovery demands, sitting for depositions, reviewing pleadings, and actively

19 monitoring counsel. *See* Wolfson Decl. ¶6 & Ex. A; Pino Decl. ¶6 & Ex. A; Posson Decl. ¶6 &

20 Ex. A. Plaintiffs understand that they owe fiduciary duties to all Class members, and they are

21 committed to vigorously prosecuting the action to seek a recovery that is fair and beneficial to the

22 Class. Wolfson Decl. ¶¶4-5, 9-10; Pino Decl. ¶¶4-5, 9-10; Posson Decl. ¶¶4-5, 9-10.

23       Plaintiffs have also retained qualified, experienced counsel who have extensive experience

24 litigating complex securities class actions and other matters. *See* Spencer Decl. Exs. 5-7 (law firm

25 resumes). Class counsel has devoted significant time and financial investment to date in

26 investigating, preparing, and prosecuting this action, including investigating the facts and law

27 applicable to the Class's claims, preparing and filing the complaints; opposing Defendants'

28

motions to dismiss, engaging in discovery including complex expert discovery, and pursuing class certification.

There are no conflicts between Plaintiffs or their counsel and the other Class members. Each of the Plaintiffs sustained losses due to the same wrongful conduct on Schwab's part as the rest of the Class. Plaintiffs' interests are fully aligned with those of the Class.

## IV.   The Proposed Class Satisfies Rule 23(b)(3)

A class action may be certified under Rule 23(b)(3) if the requirements of Rule 23(a) are met and the Court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956-57 (9th Cir. 2013); *Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, No. C 19-04744 WHA, 2021 U.S. Dist. LEXIS 12458, at*11-12 (N.D. Cal. Jan. 21, 2021).

### A.   Plaintiffs Have Proven That Common Issues Predominate

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Walker v. Life Ins. Co. of the SW*, 953 F.3d 624, 630 (9th Cir. 2020) (quoting *Stearns v. Ticketmaster Corp.*, 655 F.3d 2013, 1019 (9th Cir. 2011), *abrogated on other grounds, Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)). This requirement is satisfied when "common questions represent a significant portion of the case and can be resolved for all members of the class in a single adjudication." *Walker*, 953 F.3d at 630.  "There must be a clear justification for handling the dispute on a representative rather than on an individual basis."  *Id.* Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered on the merits in favor of the class. "The purpose of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Hamm v. Mercedes-Benz United States*, Case No. 5:16-cv-03370-EJD, 2021 U.S. Dist. LEXIS 65098, at *20 (N.D. Cal. April 2, 2021) (citing *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 461, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013)). The predominance inquiry requires "careful scrutiny to the

relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id*.

Plaintiffs do not have to prove "'that each element of their claim is susceptible to classwide proof,' so long as one or more common questions predominate." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020). "Individual differences in calculating the amount of damages will not defeat class certification where common issues otherwise predominate." *Id.*

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action.'" *Halliburton.*, 563 U.S. at 809. Section 10(b) of the Exchange Act and the SEC's Rule 10b-5 prohibit making any material misstatement or omission in connection with the purchase or sale of any security. To recover damages for a violation of Section 10(b) and Rule 10b-5, a plaintiff must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Granite Constr.*, 2021 U.S.Dist. LEXIS 12458, at \*16 (citing *Halliburton*, 573 U.S. at 267). To prevail under Section 10(b) of the Exchange Act and Rule 10b-5, Lead Plaintiff must prove all six elements.

Here, it is clear that elements 1-4 and 6 will be proven by common evidence. Courts routinely find that such elements of a securities fraud class action are proven by common evidence and predominate over other individual issues. *See Amgen*, 568 U.S. at 475 (noting that the elements of misrepresentation, materiality, and scienter are found to predominate); *Halliburton*, 563 U.S. at 809 (plaintiff is not required to demonstrate loss causation to obtain class certification). The primary question to be determined in this action is whether Schwab defrauded its customers by failing to disclose that almost all non-directed equity orders would be routed to UBS without consideration of factors relevant to providing best execution. The answer to that question will be shown by common evidence. ██████████████████████

██████████████████████████████████████

1 ███████████████████████████████████████████████

2 ███████████████████████████████████████████████

3 ███████████████████████████████████████████████

4 ███████████████████████████████████████████████

5 ████████████████████████████████████████

### 1. Economic Loss can be Calculated on a Class-Wide Basis – Without Sampling, Averaging, or Statistics

Plaintiffs will prove economic loss by common evidence. Plaintiffs will apply Mr. Bodek's methodology algorithmically to the Class members' marketable equity orders during the Class Period. Mr. Bodek has described in detail how his algorithm was developed and how it works. *E.g.*, Bodek Report at ¶¶81-90. ███████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████ What matters at this stage is that Mr. Bodek's algorithm will, on a class-wide basis, subject an objective algorithm to the Class members' trade data to demonstrate economic harm. Plaintiffs will prove at a later stage of the proceedings that Mr. Bodek's algorithm calculates individual Class members' economic harm with required specificity.

It is not required that Plaintiffs be able to quantify each Class member's loss at the class certification stage or that every Class member suffer the same amount of loss. Variation in individual damages is permitted unless individual damage calculations overwhelm common questions. *Comcast*, 569 U.S. at 35; *Bouaphakeo*, 765 F.3d at 797. Indeed, a class may be certified even if some members suffered no injury. *Tyson Foods*, 136 S. Ct. at 1049-50.

The algorithm put forth by Mr. Bodek to calculate the harm caused by Schwab's failure to provide best execution on certain trades is sound and logically tied to Plaintiffs' theory of liability as required by *Comcast*, 569 U.S. at 38. As in *Tyson Foods*, an individual plaintiff pursuing claims under Rule 10b-5 against Schwab would have to offer an expert analysis very similar to the analysis offered here by Mr. Bodek on behalf of the Class. *Tyson Foods*, 136 S.Ct at 1048. Notably, courts have approved of use of sophisticated computer algorithms in the securities fraud

context. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, No. 19-56514, 2021 U.S. App. LEXIS 9880, at *5 (9th Cir. Apr. 6, 2021). *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 66-69 (S.D.N.Y. 2009).

As explained above, Plaintiffs' proof does not rely on a statistical analysis, averaging, or other class-wide assumptions. Bodek Tr. at 67: 13-21. Bodek demonstrated that individualized harm and damages can be determined by applying a uniform methodology to all Class members to assess Schwab's execution performance with respect to each relevant trade and to determine economic harm in a consistent manner across the Class membership. Bodek Report ¶167. Bodek's methodology can be applied on an automated basis to the broad set of Schwab's customer orders during the Class Period, with accuracy and reliability to establish harm for each Class member on a class-wide basis. Bodek Report ¶171.

### 2.  Individual Issues Relating to Each Trade are not Relevant and do not Foreclose Predominance

The issue before the Court is whether Plaintiffs can show, through common proof, that Schwab's failure to seek best execution caused economic harm to Class members' trades. The duty of best execution requires that brokers "use reasonable efforts to maximize the economic benefit to the client in each transaction." *Newton*, 259 F.3d at 173 (internal quotation omitted). This standard does not look to individual traders' reasons for trading, their trading strategies, or their state of mind when they executed the trade. It looks to whether the broker used reasonable best efforts to "maximize the economic benefit" to its customers. The standards look at economic harm – not subjective harm. ███████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████

The duty to obtain best execution for a given order is an objective duty owed with respect to each order, which is not affected by an individual's thoughts or trading strategy. Bodek Report ¶140. As explained in the Bodek Report, the nature of the economic harm suffered by the class members "is not specific to the relevant identity and corresponding trading strategies of any Schwab customer . . . ." Bodek Report ¶110. The failure to obtain best execution as a result of

1  Schwab's routing trades to UBS will result in economic harm regardless of the subjective reason

2  for the Class member's trade. ███████████████████████████████████

3  ████████████████████████████; *NYSE Specialists*, 260 F.R.D. at 72 (lead

4  plaintiff's trading strategy not relevant to class certification).

5       As such, the analysis for any Class member's trade – the application of the algorithm to the

6  data – will be the same, whether the trade was a purchase of 100 shares of Microsoft at a particular

7  time on a particular day, or a sale of 500 shares of Facebook at another time on another day. The

8  harmful effect of Schwab's failure to comply with its duty of best execution as to the specific trade

9  will not depend on the investor's reason for placing the trade or the circumstances of any other

10  trade placed by the investor. Other than obtaining additional trade data from Schwab and other

11  sources, no further proceedings are necessary. Demonstrating economic loss on a trade-by-trade

12  basis will not require additional witnesses, depositions, or individual trials. It will require only the

13  application of the algorithm to additional data.

14       It is true that other courts have found that courts must address individual customers'

15  reasons behind trading in connection with a best execution claim. *E.g., TD Ameritrade*, 2021 U.S.

16  App. LEXIS 12008; *Newton*, 259 F.3d 154. These decisions are not binding on this Court, are

17  distinguishable, and, respectfully, are incorrect.

18       For example, in *TD Ameritrade* and *Newton*, the courts were concerned that evaluating

19  economic loss would "require proof of the circumstances surrounding each trade, the available

20  alternative prices, and the state of mind of each investor at the time the trade was requested." *TD*

21  *Ameritrade*, 2021 U.S. App. LEXIS 12008, at *8 (citing *Newton*, 259 F.3d at 187). ██████

22  ████████████████████████████████████████████

23  ████████████████████████████████████████████

24  ████████████████████████████████████████████

25  ██████████████████████████████████████ Although *TD*

26  *Ameritrade* reasoned that "volatile or otherwise unusual market conditions" could prevent a trade

27  from executing at the NBBO, to the extent such conditions may legitimately excuse a broker from

28

1   obtaining the NBBO price, they are recorded in objective historical data and can be systematically

2   controlled for in Mr. Bodek's methodology. *See* Rebuttal Report Ex. B ¶¶20-27.

3            Further, although ██████████████████████████████████████████████████████

4   ████████ these disputes are for the fact-finder to decide. Plaintiffs will present the jury with Mr.

5   Bodek's analysis, with an explanation of its method applicable exclusions, and other factors, and

6   the jury will determine whether Plaintiffs meet the standard for proving damages. For example, in

7   *TD Ameritrade*, the experts disagreed as to whether third-party companies provide historical data

8   to identify unusual market conditions. *TD Ameritrade*, 2021 U.S. App. LEXIS 12008, at *10. The

9   court then decided this factual dispute, concluding that "the use of published market data will not

10  identify all legitimate exclusions and the experts will have to bring their own judgment to bear to

11  identify further exclusions on a trade-by-trade basis." *Id.* at *11. But that determination – the

12  battle of the experts – was for the jury to decide. Here, Plaintiffs will prove *to the jury* that Mr.

13  Bodek's algorithm incorporates the factors necessary to prove economic harm with reasonable

14  certainty. These courts erred by taking these decisions away from the jury, effectively using the

15  class certification procedure to invade the jury's realm and foreclose the action.

16           The courts in *TD Ameritrade* and *Newton* also questioned whether a trade at a price

17  inferior to the NBBO "necessarily results in economic loss." *E.g. Id.* at *13-14.  They concluded

18  that because "[t]here are circumstances in which a trade legitimately might execute at a price

19  inferior to the NBBO price," a price inferior to the NBBO did not necessarily mean that the

20  customer failed to receive the best price. *Id.* at *13. Further, the courts noted that the duty of best

21  execution does not guarantee the best price. *Id.* at *15. But then the courts drew the wrong

22  conclusion from these facts and ignored the realities of the regulatory scheme. ████████████

23  ████████████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████

28

Further, although the courts in *TD Ameritrade* and *Newton* assert that the economic loss analysis requires inquiry into the "state of mind" of each investor at the time of the trade, they offer no explanation for how an investor's state of mind could possibly affect the price at which a security is traded. Investors' states of mind or trading strategies are not relevant to determining economic harm under the securities laws. In almost every securities fraud action, all investors who bought or sold shares are included within the class definition, without reference to their trading strategy, whether their trades were part of a hedging scheme, etc. ████████████ ███████████████████████████████████████████████████████████████ ████████████████████. Under these circumstances, it is for a jury to decide whether Plaintiffs met their burden of proving that the price disimprovement resulted from something other than Schwab's breach of its duty of best execution.

### 3. The Presence of Uninjured Class Members Does Not Defeat Predominance



Although the Class by definition only includes Schwab customers who suffered economic loss, even if the Class did contain uninjured Class members this would not defeat class certification. When addressing this factor, care must be taken not to confuse the presence of class members who were never exposed to the wrongful conduct with those who were exposed but did not suffer injury. *E.g., Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136-37 (9th Cir. 2016). The presence of Class members who *were never exposed* to the wrongful conduct, here, for

1  example, customers whose equity orders were not routed to UBS pursuant to the EOHA (who are

2  not part of the Class sought to be certified here), might defeat certification. But the presence of

3  Class members who were exposed to the wrongful conduct but who simply cannot prove damages

4  does not defeat certification unless identifying such individuals would be sufficiently

5  unmanageable to defeat predominance.

6      In *Torres*, 835 F.3d 1125, the Ninth Circuit highlighted the difference between class

7  members who were never exposed to the alleged wrongdoing and class members who were

8  exposed but were not injured. *Id.* at 1136-37. The court concluded that the existence of exposed

9  but uninjured class members "merely highlights the possibility that an injurious course of conduct

10 may sometimes fail to cause injury to certain class members. However, it fails to reveal a flaw that

11 may defeat predominance . . . ." *Id.*; *see also Wakefield v. Visalus, Inc.*, No. 3:15-cv-01857-BR,

12 2017 U.S. Dist. LEXIS 228201, at *14 (D. Or. June 23, 2017) (finding that class may include

13 members who received robocall but "may not have sustained injury"). To the contrary, the court

14 noted that "the existence of large numbers of class members who were never exposed to the

15 challenged conduct" may defeat predominance. *Torres*, 835 F.3d at 1136.

16     Further, Plaintiffs are not proposing a class definition that would allow uninjured Class

17 members to recover economic damages based on statistical averages and the assumption of

18 common harm. For example, in its recent decision in *Olean*, the Ninth Circuit noted that more than

19 a *de minimis* number of uninjured class members can defeat predominance in that action. *Olean*,

20 2021 U.S. App. LEXIS 9880, at * 29.[5] However, *Olean* is distinguishable. In *Olean*, the Ninth

21 Circuit's concern was that plaintiffs' model would allow uninjured class members to recover

22 economic damages. *Olean* is an antitrust action where damages were to be shown by statistical

23 averaging. The plaintiffs' expert calculated an average overcharge for the class and then assumed

24

25 [5] On April 28, 2021, the Ninth Circuit issued an order directing the parties to file simultaneous
   briefs on whether the case should be heard *en banc*, specifically asking the parties to discuss

26 "whether Federal Rule of Civil Procedure 23(b)(3) requires a district court to find that no more
   than a 'de minimis' number of class members are uninjured before certifying a class." *Olean*

27 *Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 2021 U.S. App. LEXIS 12707 (9th Cir.
   April 28, 2021).

28

that each class member experienced the same overcharge. *Id.* at *7. Thus, the Ninth Circuit noted the concern that "plaintiffs' statistical evidence sweeps in uninjured class members." *Id.* at 26. The court noted that "[i]f a substantial number of class members in fact suffered not injury, the need to identify those individuals will predominate." *Id.* at 27 (citations and quotations omitted). Critically, the court explained that, "[i]f injury cannot be proved or disproved through common evidence, then individual trials are necessary to establish whether a particular class member suffered harm from the alleged misconduct." *Id.* (internal citations and quotations omitted).

No such concern exists here. Unlike a statistical averaging model in an antitrust case, Mr. Bodek's algorithm does not "sweep in" injured class members – it does the opposite. The algorithm, through common evidence, identifies which Class members suffered harm, and excludes uninjured customers without the need for individual trials. Further, Schwab has the opportunity to challenge Mr. Bodek's algorithm's method to identify economic loss among the Class members, and these challenges can be addressed in a common fashion without rendering the litigation unmanageable. *See United Food & Commercial Workers Union & Emp'rs Midwest Health Benefits Fund v. Warner Chilcott Ltd.*, 907 F.3d 42, 58 (1st Cir. 2018) (where class includes uninjured members, there must be a "reasonable and workable plan" for how defendants challenge that an individual class member suffered injury in fact).

Even under *Olean*, Plaintiffs need only establish predominance by a preponderance of the evidence, viewed in light of "the persuasiveness of the evidence presented for and against certification." 2021 U.S. App. LEXIS 9880, at *12. Plaintiffs have more than met this standard by showing that Mr. Bodek's methodology can systematically demonstrate economic loss (and therefore Schwab's liability) as to individual Class members and that the methodology can likewise systematically exclude uninjured Class members. *See id.* at *14.

In the alternative, the Court can certify the following class:

> All clients of Schwab during the Class Period who placed one or more non-directed equity orders during the Class Period that were routed to UBS by Schwab pursuant to the EOHA and that received price disimprovement *and were damaged thereby*. Excluded from the Class are the officers, directors, and employees of Schwab.

1  The Class as defined earlier in this brief by its terms excludes uninjured Schwab customers. This

2  modified class definition would further clarify that point, if necessary.

3      Although some courts have declined to certify so-called "fail safe" classes, this proposed

4  alternative class is not "fail safe," because the determination of which Schwab customers were

5  damaged by price disimprovement (as opposed to receiving unavoidable price disimprovement) is

6  addressed in detail in Mr. Bodek's methodology. *See, e.g.*, Bodek Report at ¶100 (discussing

7  exclusion of, *inter alia*, equities not listed on U.S. exchanges, orders entered outside of regular

8  trading hours, and special order types). The proposed Class definition should be understood as

9  incorporating Mr. Bodek's full methodology to determine which specific trades were damaged by

10 price disimprovement. Mr. Bodek's methodology applies specific, objective, and automated

11 processes to exclude trades that received price disimprovement but were nonetheless not injured

12 by Schwab's misconduct because the disimprovement was unavoidable. As such, precisely

13 identifying Class members in this case will not require individualized determinations for each of

14 the thousands or millions of Schwab customers who traded during the Class Period. ██████

15 ████████████████████████████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████████████████████████

17 ███████████████████████████ Mr. Bodek's computer program will do the rest.

18      And, although Plaintiffs have not proposed a "fail-safe" class, even true "fail-safe" classes

19 are permissible in the Ninth Circuit. *E.g., Melgar v. CSK Auto, Inc.*, 681 F. App'x 605, 607 (9th

20 Cir. 2017) ("Nor did the district court abuse its discretion by certifying a fail-safe class.") The

21 rational for this is that "'[i]t is implicit in the definition of [a] class that its members are persons

22 who claim to have been (or to be)' wronged." *La Caria v. Northstar Location Servs.*, No. 2:18-cv-

23 00317-GMN-DJA, 2020 U.S. Dist. LEXIS 93630, at *19 (D. Nev. May 28, 2020) (citing *Vizcaino

24 v. United States Dist. Ct. Wash.*, 173 F.3d 713, 722 (9th Cir. 1999). The Ninth Circuit has noted

25 that its "caselaw appears to disapprove of the premise that a class can be fail-safe." *Melgar*, 681 F.

26 App'x at 607 (citing *Vizcaino*, 173 F.3d at 721-22 (rejecting a claim that a class definition

27 defining the plaintiffs as common law employees assumed their contested legal status and was

28 therefor 'circular')). "Although the Ninth Circuit has not ruled directly on the appropriateness of

fail-safe classes, it does not look favorably on precluding class certification under the fail-safe class theory." *Brown v. DirectTV, LLC*, 330 F.R.D. 260, 268 (C.D. Cal. 2019); *Pavloff v. Cardinal Logistics Mgmt. Corp.*, No. CV 20-00363 PA (KKx), 2020 U.S. Dist. LEXIS 221745, at *29 n.8 (C.D. Cal. Oct. 7, 2020).

### 4.    Plaintiffs are Entitled to a Presumption of Reliance on Schwab's Omissions

Plaintiffs are entitled to a presumption of reliance on behalf of the Class. *Affiliated Ute*, 406 U.S. 128. In *Affiliated Ute*, the defendant bank breached its fiduciary duty by failing to disclose material facts with respect to its clients' stock trades in violation of a duty to make such disclosure. *Id.* at 153. The Court explained that in such cases "involving primarily a failure to disclose [material facts], positive proof of reliance is not a prerequisite to recovery." *Id.* The Third Circuit has recognized that where fiduciaries such as brokers fail to disclose material information to their clients, plaintiffs are also entitled to a presumption of reliance. *Newton*, 259 F.3d at 174-75) (cases cited therein).

Because Plaintiffs were owed a duty of disclosure by Schwab due to their pre-existing broker-client relationship and base their claims primarily on the omission of material information by Defendants, they are entitled to a presumption of reliance. *See Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999) (*Affiliated Ute* presumption of reliance is generally available to plaintiffs alleging violations of section 10(b) based on omissions of material fact); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 (JSC), 2019 U.S. Dist. LEXIS 166832, at *316-17 (N.D. Cal. Sept. 26, 2019). Where a claim involves "primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery." *Blackie*, 524 F.2d at 905.





Thus, although Schwab made several affirmative misrepresentations concerning best execution, the gravamen of this case is "what [Schwab] did not say." *See Crago v. Charles Schwab & Co.*, No. 16-cv-03938-RS, 2017 U.S. Dist. LEXIS 215871, at *23 (N.D. Cal. Dec. 5, 2017) (citing *In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 48 (S.D.N.Y. 2010)).

Schwab's prior argument that "none of the SAC's alleged 'omissions,' standing alone, gives rise to a claim for relief," is incorrect. The Supreme Court stated, with respect to material omissions, "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact." *Affiliated Ute*, 406 U.S. at 153-54; *In re Montage Tech. Grp. Ltd. Sec. Litig.*, No. 14-cv-00722-SI, 2016 U.S. Dist. LEXIS 53734, at *19-20 (N.D. Cal. Apr. 21, 2016). Further, Defendants' argument could effectively eliminate liability for omissions. An actionable omission claim arises "only when disclosure is 'necessary . . . *to make the statements made*, in light of the circumstances under which they were made, not misleading.'" *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1278 (9th Cir. 2017)

(emphasis added). By definition therefore, an actionable omission does not stand alone, but must be tied to a false affirmative statement.

### 5. Class Members are Also Entitled to Restitution or Rescission

As a result of Schwab's breaches, all Class members suffered economic loss and so are entitled to restitution or rescissory damages, regardless of the amount of monetary "disimprovement" suffered by their trades. Remedies for a breach of Rule 10b-5 include monetary damages, rescissory damages, and restitution. The Supreme Court has noted that federal securities laws are intended to compensate defrauded investors, and also to deter fraud and manipulative practices by encouraging a full disclosure of material information. *Loftsgaarden*, 478 U.S. 647. Class members are entitled to receive the fair value of what they should have received absent any fraudulent conduct, "except for the situation where the defendant received more than the seller's actual loss. In the latter case damages are the amount of the defendant's profit." *Affiliated Ute*, 406 U.S. at 155; *Serwold*, 687 F.2d at 280-81.

Class members, therefore, are entitled to monetary relief as fashioned by the Court. ███

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

### B. Superiority

Class action treatment is patently superior to litigating individual actions. The Supreme Court has stated that the policy consideration behind Rule 23(b)(3) is "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617.

To litigate each individual Class members' claim would require hundreds of thousands of plaintiffs devoting many years and significant financial resources to prove the same set of facts: Schwab's material omissions and misstatements, scienter, the effects of the EOHA, causation, and economic harm. Surely it would be more efficient to litigate all common issues, including Schwab's challenges to and the application of Mr. Bodek's algorithm to trade data, in this one

1  action, rather than litigating each issue over and over in separate trials. Indeed, it would be folly

2  for Schwab to suggest that it would prefer to spend its financial resources litigating this matter

3  hundreds of thousands of times. Schwab's claim that individual issues predominate is not

4  motivated by a desire to seek a "fair and efficient adjudication of" its customers' claims, but is

5  motivated by the recognition that absent a class action it will avoid having to litigate any of its

6  customers' claims – either due to the running of the statute of repose or the reality that few

7  investors will bring individual claims.

8         **C.**       **The Proposed Class Also Satisfies Rule 23(b)(1)**

9        The Court can certify the Class under Rule 23(b)(1) because prosecuting separate actions

10  would create the risk of inconsistent verdicts and varying adjudications. In the event Schwab truly

11  wished to litigate hundreds of thousands of claims concerning its failure to fulfill its duty of best

12  execution, it is clear that different courts and different juries can reach different conclusions as to

13  the scope of Schwab's duties, the efficacy of Mr. Bodek's algorithm, and a host of other disputed

14  issues. These inconsistent verdicts could render Schwab subject to various conflicting obligations

15  to its customers and the Class members.

16  **V.**      **CONCLUSION**

17        For the foregoing reasons, Plaintiffs respectfully request entry of an order certifying this

18  action as a class action on behalf of the Class, appointing Plaintiffs Pino, Wolfson and Posson as

19  Class Representatives, and appointing Glancy Prongay & Murray LLP, Bragar Eagel & Squire,

20  P.C., and Levi & Korsinsky, LLP as Class Counsel.

21

22  Dated: April 30, 2021               **GLANCY PRONGAY & MURRAY LLP**

23                                   By:   */s/ Garth Spencer*
                                 Jonathan Rotter (#234137)

24                                    jrotter@glancylaw.com
                               Lionel Glancy (#134180)

25                                    lglancy @glancylaw.com
                               Garth Spencer (#335424)

26                                    gspencer@glancylaw.com
                               1925 Century Park East, Suite 2100

27                                   Los Angeles, California 90067
                               Telephone: (310) 201-9150

28                                   Facsimile: (310) 201-9160

1

2

**BRAGAR EAGEL & SQUIRE, P.C.**
Lawrence P. Eagel
  eagel@bespc.com
David J. Stone (#208961)
  stone@bespc.com
Melissa A. Fortunato (#319767)
  fortunato@bespc.com
810 Seventh Avenue, Suite 620
New York, New York 10019
Telephone: (212) 308-5858
Facsimile: (212) 486-0462

3

4

5

6

7

8

*Attorneys for Lead Plaintiff Robert Wolfson and*
*Co-Lead Counsel for the Class*

**LEVI & KORSINSKY, LLP**
Eduard Korsinsky (*pro hac vice to be submitted*)
  ekorsinsky@zlk.com
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

9

10

11

12

13

-and-

14

15

Nicholas I. Porritt (admitted *pro hac vice*)
  nporritt@zlk.com
Alexander A. Krot III (admitted *pro hac vice*)
  akrot@zlk.com
1101 30th Street, NW
Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Facsimile: (212) 363-7171

16

17

18

19

20

*Attorneys for Plaintiff K. Scott Posson*

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE BY ELECTRONIC POSTING

2          I, the undersigned say:

3          I am not a party to the above case, and am over eighteen years old. On April 30, 2021, I

4   served true and correct copies of the foregoing document, by posting the document electronically

5   to the ECF website of the United States District Court for the Northern District of California, for

6   receipt electronically by the parties listed on the Court's Service List.

7          I affirm under penalty of perjury under the laws of the United States of America that the

8   foregoing is true and correct. Executed on April 30, 2021, at Los Angeles, California.

9

10                                              *s/ Garth Spencer*
                                               Garth Spencer
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28