UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CRAGO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHARLES SCHWAB & CO., INC., et al.,<br><br>Defendants. | Case No. 16-cv-03938-RS<br><br>**ORDER DENYING MOTION FOR CLASS CERTIFICATION** |

Lead Plaintiffs Robert Wolfson and Frank Pino ("Lead Plaintiffs"), together with plaintiff K. Scott Posson (collectively, "Plaintiffs"), bring this putative class action to redress alleged violations of securities law committed by defendants Charles Schwab & Co and Schwab Corp. ('Schwab"). Plaintiffs allege that between July 13, 2011 and December 31, 2014 (the "Class Period"), Schwab routed customer orders to UBS Securities LLC ("UBS") in a manner inconsistent with Schwab's duty of best execution. Plaintiffs aver that Schwab made material misrepresentations by stating that it adhered to the duty of best execution and omitted key information about an agreement to route most orders to UBS for execution, without verifying that UBS was providing best execution.

Plaintiffs seek certification under Federal Rule of Civil Procedure 23(b)(1) and (b)(3). Class certification is inappropriate because there is no presumption of reliance in this case, and requiring individualized proof of reliance as to each plaintiff defeats the commonality requirement

of Rule 23(a). Further, the lack of a presumption of reliance in this securities class action precludes establishing predominance as required by Rule 23(b)(3).

## I. BACKGROUND[1]

### A. Schwab, UBS, and Equities Order Routing

Broker-dealers, such as Schwab, buy and sell securities such as stocks and bonds for their clients. After receiving an order from a client, the broker-dealer routes the order to a venue for execution. Although sometimes a client specifies the venue an order should be routed to, most retail orders are "non-directed," including the vast majority of retail orders placed with Schwab. Non-directed orders allow the broker to choose a venue for execution.

Securities laws and regulations place some limitations on how broker-dealers may execute orders, such as the duty of best execution. Broker-dealers, including Schwab, are required under Financial Industry Regulatory Authority ("FINRA") Rule 5310 to "use reasonable diligence to ascertain the best market . . . so that the resultant price to the customer is as favorable as possible under prevailing market conditions." *See also* SEC Rel. No. 34-37619A, 61 FR 48290 (Sept. 12, 1996) ("[The] duty of best execution requires a broker-dealer to seek the most favorable terms reasonably available under the circumstances for a customer's transaction."). When a broker-dealer considers whether its existing routing scheme provides the most beneficial terms for customer orders, the broker-dealer should consider, among other factors, price improvement opportunities,[2] differences in price disimprovement,[3] the speed of execution, transaction costs, and customer needs and expectations. *See* FINRA Rule 5310.09(b).

---

[1] The facts underlying this controversy are familiar to the parties, and are summarized here for purposes of providing a brief synopsis. Additional detail is included as necessary in the discussion below. *See generally infra* Part III.

[2] Price improvement refers to "the difference between the execution price and the best quotes prevailing at the time the order is received by the market[.]" FINRA Rule 5310.09(b)(1).

[3] Price disimprovement refers to "situations in which a customer receives a worse price at execution than the best quotes prevailing at the time the order is received by the market[.]" FINRA Rule 5310.09(b)(2).

In 2004, Schwab and UBS entered into an Equities Order Handling Agreement ("EOHA"), in which Schwab agreed to route many orders to UBS. Schwab and UBS entered into the agreement after UBS acquired the capital markets divisions of Schwab Corp. UBS paid Schwab approximately $100 million each year the agreement was in effect to receive the orders, and Schwab routed more than 95% of its retail trade orders to UBS, even though other vendors were also available.

**B. Plaintiff's Allegations**

Plaintiffs aver that although Schwab stated on its website it adhered to the duty of best execution, Schwab violated that duty in routing most orders to UBS pursuant to the EOHA. Plaintiffs explain that routing to UBS pursuant to the EOHA violated the duty of best execution because of UBS's inferior performance as compared to other possible vendors and Schwab's failure to monitor the execution quality of the routed orders adequately, contrary to claims on its website. Plaintiffs aver that Schwab failed to disclose the EOHA to its retail clients, and clients such as the Plaintiffs relied on Schwab's false statements when choosing to place orders through Schwab. The result of Schwab's violation of the duty of best execution, Plaintiffs contend, is that customers in the proposed class received higher prices for purchase orders and lower prices for sell orders than if their broker-dealer had fulfilled the duty of best execution, among other harms.

**C. Proposed Class and Putative Class Claims**

Plaintiff moves to certify the following class:

> All clients of Charles Schwab & Co., Inc. or The Charles Schwab Corporation (together, "Schwab"), between July 13, 2011 and December 31, 2014 (the "Class Period"), who placed one or more non-directed equity orders during the Class Period that were routed to UBS by Schwab pursuant to the Equities Order Handling Agreement ("EOHA") and that received price disimprovement. Excluded from the Class are the officers, directors, and employees of Schwab.

Plaintiffs assert claims on behalf of the putative class under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

"To recover damages in a private securities-fraud action under [§ 10(b) and Rule 10b-5],

a plaintiff must prove '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460–61 (2013) (quoting *Matrixx Initiatives, Inc v. Siracusano*, 563 U.S. 27, 37–38 (2011)).

## II. LEGAL STANDARD

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure, which represents more than a mere pleading standard. To obtain class certification, plaintiffs bear the burden of showing they have met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively demonstrate . . . compliance with the Rule[.]" *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Rule 23(a) provides that a court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012). If all four Rule 23(a) prerequisites are satisfied, a court must also find that plaintiffs "satisfy through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

## III. DISCUSSION

**A. Presumption of Reliance**

As a plaintiff must demonstrate reliance upon the omission or misrepresentation in order to recover damages under Rule 10b-5, a threshold issue is whether Plaintiffs may invoke a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128

(1972). In *Affiliated Ute*, the Supreme Court held that in a case "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery." *Id.* at 153. Instead, "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." *Id.* at 153–54.

The Ninth Circuit recently addressed the relationship between omissions and misrepresentations and when a plaintiff can invoke the *Affiliated Ute* presumption in a "mixed" case involving both omissions and misrepresentations. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2 F.4th 1199 (9th Cir. 2021). In *Volkswagen*, the Ninth Circuit declined to apply the *Affiliated Ute* presumption, despite the plaintiff's allegation of a serious omission: that "Volkswagen failed to disclose—for years—it was secretly installing defeat devices in its 'clean diesel' line of cars to mask unlawfully high emissions from regulators and cheat on emissions tests." *Id.* at 1206.

The Ninth Circuit in *Volkswagen* explained that the Supreme Court's justification in establishing a presumption in *Affiliated Ute* was that "reliance is impossible or impractical to prove when no positive statements were made." *Id.* In *Volkswagen*, the Plaintiff pled over nine pages of material misrepresentations concerning Volkswagen's environmental compliance and financial liabilities in addition to the omission concerning defeat devices, and pled that Plaintiff relied on those affirmative misrepresentations. *Id.* at 1206, 1208. The court also noted the relationship between the alleged misrepresentations and alleged omissions, explaining that the "omission regarding Volkswagen's use of defeat devices is simply the inverse of the affirmative misrepresentations" concerning environmental compliance and financial obligations. *Id.* at 1208. As there were affirmative misrepresentations allowing the plaintiff to "prove reliance through ordinary means by demonstrating a connection between the alleged misstatements and its injury," the *Affiliated Ute* presumption did not apply. *Id.* at 1209.

Similar to *Volkswagen*, Plaintiffs in this action allege both affirmative misrepresentations and a key omission. In addition to failing to disclose the EOHA, Plaintiffs allege in their Second Amended Class Action Complaint ("SAC") that during the Class Period, Schwab "stated that . . .

it complied with its duty of best execution," and that Schwab claimed that it sought to exceed the best execution criteria as established by the SEC. SAC, Dkt. 81 ¶ 4, 40. Plaintiffs also allege that the 2013 and 2014 Account Agreements, which clients had to agree to in order to use Schwab's services, specifically provided that Schwab would route orders only after considering quality metrics. SAC, Dkt. 81 ¶ 41, 45.

Plaintiffs argue that *Volkswagen* was a fact-specific opinion, and that the facts in this case bear no resemblance to those there. This present case is certainly not identical to *Volkswagen*, in which the plaintiff alleged over nine pages of affirmative misrepresentations. 2 F.4th at 1206. The affirmative misrepresentations alleged in this case are not so extensive. The *Volkswagen* decision, however, does not appear to focus solely on the quantity of misrepresentations. Instead, *Volkswagen* emphasizes the relationship between the omissions and the misrepresentations. If the omissions are effectively the inverse of the misrepresentations—in that they render the statement alleged to be a misrepresentation untrue—a case is not primarily an omissions case. *Id.* at 1208.

Plaintiffs' own allegations in the SAC support this understanding of the relationship between the alleged misrepresentations and alleged omission. The SAC alleges that "statements on Schwab's website and statements made to the government and the media . . . were designed to convince" both the public and Schwab's clients that "Schwab was routing its clients' orders upon consideration of proper execution quality metrics when, in fact, Schwab omitted material facts that indicated that it was in fact prioritizing the [EOHA]." SAC, Dkt. 81 ¶ 156. What matters here is not just that Schwab omitted information about the EOHA, but that Schwab affirmatively stated it was providing best execution.

Further, like in *Volkswagen* in which the plaintiff "explicitly ple[d] reliance" on the affirmative misrepresentations, 2 F.4th at 1208, Plaintiffs also pled that they relied on Schwab's misrepresentations. In the SAC, Plaintiffs wrote that they "placed orders through Schwab with an expectation of best execution throughout the Class Period" because of "the dissemination of the [Schwab's] public statements and documents" and "in reliance on Defendants' materially misleading statements and omissions[.]" SAC, Dkt. 81 ¶ 158.

1       Additionally, the existence and nature of the EOHA was not completely omitted from the

2 Account Agreements. As Plaintiffs noted in the SAC, the Account Agreements for 2011 and 2012

3 referred to the EOHA but stated Schwab did not receive consideration for its agreement with UBS:

> Part of the consideration Schwab received for the sale of its capital markets business to UBS in 2004 related to the execution services agreements with UBS and Schwab's commitments to route most types of equity and listed options orders through UBS for eight years. However, Schwab does not earn rebates or other consideration from UBS or other firms or markets for equity and options orders routed through UBS or routed by Schwab directly.

SAC, Dkt. 81 ¶ 69. The agreement was again referenced in the 2013 and 2014 Account Agreements, which stated that Schwab "may" receive compensation for routing orders:

> Schwab may receive remuneration, such as liquidity or order flow rebates, from a market center to which orders are routed. In addition, part of the consideration received by The Charles Schwab Corporation for the sale of its capital markets business to UBS in 2004 related to an order routing agreement with UBS, which has been extended.

SAC, Dkt. 81 ¶ 70. Thus, the references to the existence of an agreement, along with mischaracterizations of the nature of the agreement, also support that this case is not one primarily involving omissions, as understood following *Volkswagen*.

As in *Volkswagen*, "Plaintiff[s] allege[] an omission, and that omission looms large over Plaintiff[s'] claims." 2 F.4th at 1206. The omission, however, is relevant to proving that affirmative statements concerning the duty of best execution were inaccurate. The existence of these affirmative statements is key, because they mean "Plaintiff[s] can prove reliance through ordinary means by demonstrating a connection between the alleged misstatements and [their] injury." *Id.* at 1209. As the Ninth Circuit explained in *Volkswagen*, the ability to prove reliance on affirmative misrepresentations removes *Affiliated Ute*'s concern about the "difficult or impossible evidentiary burden of proving a 'speculative possibility in an area where motivations are complex and difficult to determine.'" *Id.* (quoting *Blackie v. Barrack*, 524 F.2d 891, 906 (9th Cir. 1981)). Thus, in accordance with *Volkswagen*, this is not a case primarily alleging omissions that should be afforded a presumption of reliance under *Affiliated Ute*.

**B. Class Certification**

      **1.**      <u>**Rule 23(a)**</u>

Schwab does not contest the adequacy and numerosity requirements, but contests both the commonality and typicality requirements. As explained below, as Plaintiffs cannot demonstrate commonality, typicality need not be reached.

      *i.*      *Commonality*

Demonstrating commonality requires a common contention that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. In *Wal-Mart*, the Supreme Court held that commonality was not satisfied because "the crux of the inquiry [was] the reason for a particular employment decision," and it was "impossible to say that examination of all the class members' claims for relief will produce a common answer" to the question of why each particular class member was disfavored. *Id.* at 352 (internal quotation marks and citation omitted).

Here, the crux of the inquiry for the reliance element is whether each investor relied on Schwab's alleged misrepresentations and omissions when conducting each particular trade. Although this inquiry would require asking each investor a common question, i.e., whether they had read the alleged misrepresentation and relied on it when choosing to trade with Schwab, there is not a common answer that "resolve[s] [the] issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Instead, each plaintiff would need to provide individualized evidence of their reliance.

The diverse motivations Plaintiffs held for using Schwab showcase the difficulty of demonstrating commonality as to reliance. In addition to their stated reliance on Schwab's affirmations that it provided best execution, Plaintiffs gave other reasons for using Schwab, including the quality of its platform, lower commissions as compared to other brokers, and recommendations from family. Members of the putative class could have chosen to use Schwab even if they had known Schwab was not providing best execution. *Cf. Keirnan v. Homeland, Inc.*,

1   611 F.2d 785, 789 (9th Cir. 1980) (explaining that a presumption of reliance may be rebutted by

2   showing that a "plaintiff did not attach significance to the misrepresented facts"). Indeed, for a

3   consumer trading a small number of stocks, knowledge of the relatively small individual losses

4   attributed to a failure to provide best execution may not have changed the consumer's choice to

5   use Schwab, considering the variety of other factors at play when choosing a broker-dealer.

Given the millions of trades at issue in this proposed class, the need to analyze individualized proof of reliance as to each proposed class member "gives no cause to believe that all [the Plaintiffs'] claims can productively be litigated at once." *Wal-Mart*, 564 U.S. at 350. Thus, the commonality requirement has not been satisfied.

### 2. Rule 23(b)

Plaintiffs seek certification under Rules 23(b)(1)(A) and 23(b)(3). In addition to certification not being appropriate for the reason described above, certification is also unavailable under Rule 23(b)(3) due to a lack of predominance.

Certification under Rule 23(b)(3) is proper where the trial court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In Rule 10b-5 suits, "[r]equiring proof of individualized reliance from each member of the proposed plaintiff class effectively would [] prevent[] [plaintiffs] from proceeding with a class action, since individual issues then would [] overwhelm[] the common ones." *Basic Inc. v. Levinson*, 485 U.S. 224, 242, (1988); *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 268 (2014). Since the reliance presumption is not triggered in this case and Plaintiffs must present individualized proof of reliance, they cannot demonstrate predominance.

### IV. CONCLUSION

Consistent with the foregoing, the motion for class certification under Rules 23(a),

ORDER DENYING MOTION FOR CLASS CERTIFICATION
CASE NO. 16-cv-03938-RS

9

23(b)(1)(A), and 23(b)(3) is denied.[4]

**IT IS SO ORDERED**.

Dated: October 27, 2021

_____
RICHARD SEEBORG
Chief United States District Judge

---

[4] Schwab also filed a motion to exclude the testimony of Plaintiffs' expert witness, Haim Bodek. *See* Dkt. 173. Bodek's report concerned economic loss and an algorithm that he stated could analyze which orders sustained an economic loss during the Class Period. As the court denies class certification due to a lack of commonality and predominance as to the reliance requirement, this motion to exclude is denied as moot. Plaintiffs' unopposed administrative motion for leave to exceed the page limit in their reply brief concerning class certification, *see* Dkt. 175, is granted.